## Case No. 11,480.

PUTNAM v. HICKEY et al.

[5 Fish. Pat. Cas. 334; 3 Biss. 157; 2 O. G. 225.] [1]

Circuit Court, E. D. Wisconsin. Feb. 24, 1872.

PATENTS — BOTTLE-STOPPER FASTENER — VALIDITY — INFRINGEMENT.

1. Letters patent granted to H. W. Putnam for "improved bottle-stopper fastener," March 15, 1859, reissued January 24, 1864, are valid.

2. A bottle-stopper fastener, formed of wire, and bent into a U-shape at the part where it passes over the cork, so as to embrace the plunger of the bottling machine, and thus permit the bale to be swung up over the cork before the plunger is withdrawn, is not anticipated by those fasteners which have no provision for receiving the plunger of a bottling-machine.

In equity. Final hearing on pleadings and proofs. Suit brought [by H. W. Putnam against Sephreness Hickey and others] on letters patent [No. 23,263] for an "improved bottle-stopper fastener," granted to complainant, March 15, 1859, and reissued January 24, 1864 [No. 1,606]. The invention is fully described in the opinion, and is illustrated by the accompanying engraving, which also shows one of the forms of the stopper-fasteners described in the Chalus patent, and by which it was insisted by the defendants the invention of Putnam was anticipated.

Chalus.

Putnam.

[1] [Reported by Samuel S. Fisher, Esq., and by Josiah H. Bissell, Esq., and here compiled and reprinted by permission.]

George B. Goodwin and Thomas A. Jenckes, for complainant.

S. W. Granger and Wm. P. Lynde, for defendants.

MILLER, District Judge. Complainant, in his bill, states that he was the original and first inventor of a new and useful improved bottle-stopper fastener, for which letters patent were issued to him bearing date March 15, 1859; and that he surrendered said patent, and reissued letters patent were received by him, dated January 19, 1864, designated as reissue No. 1,606, which granted to complainant for the term of fourteen years, from March 15, 1859, the full and exclusive right and liberty of making, constructing, using, and selling to others to be used, the said invention, described in the amended specification.

In the schedule referred to in the letters patent, it is stated that "fastenings for bottles" have heretofore been in use in which a strap of metal has extended over the cork from a hinge or joint formed on each side of the neck of the bottle by a second metallic strap. The nature of the invention consists in forming the fastener of wire, bent in such a manner that if the pressure upon the cork is sufficient to bend the wire-fastener, it will retain the cork more firmly, and the cork will require to be pushed in before the fastener can be pushed aside, thus causing the pressure to render the fastener more secure, instead of more liable to failure.

Joints are formed for securing the fastener and forming a hinge, upon which it may be turned aside, by bending the ends of such wires at right angles, or nearly so, to the sides of the fastener. Wire is used to attach this fastener to the bottle, in which the eyes are formed for receiving the ends of the fastener, and on which the fastener swings, thus producing by one piece of wire a much more simple, effective, and cheap attachment than any before made.

The schedule further represents that the fastener is of two pieces of wire. Bent wire of about one-tenth of an inch in diameter embraces the stopper or cork of the bottle. The two sides are nearly straight, curved a little in one direction to fit the enlargement upon the neck of the bottle. The lower ends are turned outward, in this manner forming the pin for the hinge. The middle portion of this wire is bent so as to stand nearly at right angles to the sides, the horizontal parts being nearly parallel, and a space between being left sufficient for the piston that presses the cork into the neck of the bottle for the purpose of holding the carbonic-acid gas in solution, with which the liquid is charged. In the wire that surrounds the neck of the bottle are loops into which these ends are inserted, and which, together, form a hinge upon each side of the neck of the bottle, allowing the wire to be turned back, thus leaving the stopper free.

Complainant claims to secure by letters patent: "1. Forming the fastener at the part that comes over the cork of a piece of wire of a U-form, with the ends returned and connected to the bottle, in order that the pressure on the cork or stopper may cause the fastener to hold more securely, as specified. 2. A wire-fastener for a cork or stopper, in which the ends of the wire are bent nearly at right angles to form the joint or hinge on which the fastener is turned, substantially as specified. 3. Forming the eyes for the reception of the fastener by means of a wire bent as set forth. 4. A wire-fastener for the stoppers of bottles, fitted so that it can be pressed aside from over the stopper, as set forth, in combination with a band or fastening attaching the same to the neck of bottle, as specified."

The defendants are charged in the bill with unlawfully and wrongfully making and selling, at the city of Milwaukee, large numbers of bottle-stopper fasteners, made substantially as described in the reissued letters patent, with a prayer for an injunction and for an accounting.

Defendants, in their answer, do not deny making, using, and selling an article similar to that patented to complainant, but they deny the making, using, or selling any invention for which the complainant has or has had the exclusive right or privilege to make, use, or sell, or in violation of any rights or privileges under the said reissued letters patent; or any cork-fastener containing or embracing any invention of the complainant, or any material part thereof.

It is alleged in the answer, upon information and belief, that the alleged invention was not new and original with the complainant, but that it was communicated to him, and explained to him by one John Schrink, residing at Toledo, in the state of Ohio.

It is further alleged by the defendants that, for an improvement similar to that claimed by complainant, letters patent were granted to one John Allender, of New London, in the state of Connecticut, July 24, 1855, and that he and his heirs have continued ever since making and using the articles so patented to him.

It is also alleged in the answer, that long before the patent and reissue patented to complainant, the same and each and every material part thereof was described, set forth, and explained in volume 2 of the Patent Office Reports of the United States, in the year 1855, on pages 175 and 337; number of the patent, 13,338. Also in the English Patent Reports for the year 1848; number of the patent, 12,330, and issued to Thomas Masters in the same year. Also in the English Patent Reports for the year 1856; number of the patent, 2,088 or 20,088, issued to one Chalus. Also in the English Patent Reports for the year 1857, in the patent issued, as is described and set forth, to James Hincks and James Tyson Nibbs. January 23, 1857. Also in Bufnoir's Provisional Protection, English

patent; date of patent, August 1, 1855. Also in English Patent Reports for the year 1854; number of patent, as described therein, 1,823; and in the claim or patent issued to Henry Bauckham. Also in same reports for the year 1853, in claim or patent of Henry G. James, or Herbert James. Also in first series of French Patent Reports, in patent issued to C. Goin, March 25, 1835. Also in volume 3, page 232, 1815. Also in volume 25, page 125, second series, French Brevets; and the plates of the same in same volume, page 26, or No. 26; date of patent, October 14, 1851. Also in volume 20, second series of same works, page 208; see plates. And on these facts, so pleaded by the defendants, they allege that the letters patent to complainant are null and void.

It does not appear in evidence that John Schrink communicated to complainant sufficient facts to enable him to form a model for his invention. On the contrary, this man, John Schrink, is one of the witnesses to complainant's application; and complainant denies having obtained from Schrink the alleged intelligence.

There is also proof sufficient to establish the facts that the improvement of complainant has become of general use, and that the use extends back to a short time after the date of the amended letters patent. Referring to the date of the original patent, its validity may be legally presumed.

The evidence of the witnesses, in connection with the exhibits of the patented articles annexed to bottles, I think, substantially supports the schedule description of the letters patent as claimed by complainant.

It would be tedious to follow in detail the evidence in the description and explanation of the complainant's improvement.

In regard to several of the patents mentioned in the answer, there is no satisfactory evidence of their construction or description. I will therefore lay aside all consideration of the patents referred to in the reports of the English patent to Howe and the provisional protection to Hincks & Nibbs, Bufnoir, Bauckham & Glover, and to James. The French patent to Ador had no provision for being swung on or off the cork, or to be used with a bottling-press. The English patents to Masters, and the French patent to Menage and Bougy, are not wire-fasteners. Their fasteners are made of iron or metal, both in the neck-bend and in the part or bale that swings over the corks, which is a circular plate, resting on the top of the cork. From the model, I think that the fasteners could not be used with a bottling-press, there being no provision for receiving the plunger of the press, so that the fastener could be swung over the cork before the plunger was removed.

In addition, it is made of iron, at a great expense. In the patent to Menage and Bougy there is a neck-band of metal, to which hooks are attached to receive the bale, instead of eyes, and a plate rests on the top of the cork, cut out on one side from the central hole to the periphery—the central hole being for the purpose and of the size only to receive a siphon-tap.

The patent of Chalus comes nearer to that of complainant than any other introduced in this record; but I think there is a marked difference between them. In Chalus' patent the eyes formed upon the neck-wire have their planes radial with the bottle, instead of parallel with the sides of the bottle; and the hinges in the bale are formed by the loops of the wire bent round in a plane parallel to the sides of the bottle, instead of having merely short gudgeons standing radially to the bottle. And the bale of the Chalus fastener is not so formed as to take under the swell upon the neck of the bottle as complainant's, which relieves the hinges of a great portion of the strain. There does not appear, in the Chalus fastener, to be any provision for its use in a bottling-machine. In Chalus' fastener, neither the bale-wire nor the neck-wire are constructed in the same way as complainant's. There are other differences between these two fasteners which I need not trace. In the use of complainant's fastener there is a great saving of time, labor, and expense over any of the other patents, and I think it was a patentable improvement.

From as thorough examination of the points and exhibits as my other duties have permitted, and from the arguments of the counsel, I have come to the conclusion that complainant's patent is for an improvement in the fastener of bottles, as described in his patent and schedule thereto annexed, and that the patent is valid. Decree accordingly.

[For other cases involving this patent, see Putnam v. Weatherbee, Case No. 11,485; Putnam v. Yerrington, Id. 11,486; Putnam v. Sudhoff, Id. 11,483; Putnam v. Lomax, 9 Fed. 448.]